## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## FORT LAUDERDALE DIVISION

In Re:                                           Bk No.: 15-20816-JKO

TERESA PAULA BURNS                               Chapter 13
_____Debtor_____ /

### EX-PARTE MOTION TO APPROVE LOAN MODIFICATION AGREEMENT

Comes now, CitiMortgage, Inc, by and through Counsel undersigned and file this Motion to Approve Loan Modification Agreement and in support thereof would state as follows:

1.      The Debtor has been offered a loan modification under the terms attached as an exhibit hereto.

2.      The new principal balance of the loan will be $210,232.80.  Payments in the amount of $1,310.60 begin February 1, 2017 and the loan will now mature March 1, 2034.

3.      Payment(s) made to the Chapter 13 Trustee constitute timely payments made to Creditor, during the remainder of the Plan and the Debtor will continue making the modified mortgage payments after the Plan has completed.

4.      The Trustee shall disburse payments as soon as practicable.

5.      The payment address is:

CITIMORTGAGE, INC.
PO BOX 688971
DES MOINES, IA 50368-8971

**WHEREFORE,** Creditor requests this Honorable Court for its Order Approving the attached loan modification agreement.

PH # 82074                                       1

**I HEREBY CERTIFY**, that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A).

June 26, 2017

/s/ Stefan Beuge, Esquire
Stefan Beuge, Esq., Florida Bar No. 68234
Phelan Hallinan Diamond & Jones, PLLC
2727 West Cypress Creek Road
Ft. Lauderdale, FL 33309
Tel: 954-462-7000 Ext. 56588
Fax: 954-462-7001
Email:
FLSD.bankruptcy@phelanhallinan.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing, and any

applicable exhibits attached thereto, has been served electronically, or routed for service by U.S.

Mail, to the following:

TERESA PAULA BURNS
5541 NW 52 CIR
COCONUT CREEK, FL 33073

CHAD T VAN HORN
330 N ANDREWS AVE #450
FT LAUDERDALE, FL 33301

ROBIN R WEINER
POB 559007
FORT LAUDERDALE, FL 33355

UNITED STATES TRUSTEE (SERVED ELECTRONICALLY)
OFFICE OF THE UNITED STATES TRUSTEE
51 SW FIRST AVENUE, ROOM 1204
MIAMI, FL 33130

Date:   June 27, 2017          /s/ Stefan Beuge, Esquire
                               Stefan Beuge, Esq., Florida Bar No. 68234
                               Phelan Hallinan Diamond & Jones, PLLC
                               2727 West Cypress Creek Road
                               Ft. Lauderdale, FL 33309
                               Tel: 954-462-7000 Ext. 56588
                               Fax: 954-462-7001
                               Email:
                               FLSD.bankruptcy@phelanhallinan.com





HELPING YOU STAY IN YOUR HOME.



*You may be able to make your payments more affordable.*
**Act now to get the help you need!**

February 3, 2017

TERESA P BURNS
CURTIS C BURNS
5541 NW 52ND CIRCLE
COCONUT CREEK, FLORIDA 33073

Property Address:      5541 NW 52 CIRCLE
                       COCONUT CREEK, FLORIDA 33073
CitiMortgage Loan#: ███████8121

Dear CitiMortgage Customer(s),

**Congratulations!** You have been approved for a Home Affordable Modification. As previously described, if you continue to comply with the terms of the Home Affordable Modification trial period plan, we will modify your mortgage loan and waive all prior late charges that remain unpaid.

The enclosed Home Affordable Modification Agreement ("Modification Agreement") reflects the proposed terms of your modified mortgage.

**How to Accept This Offer:**

**STEP 1**    **COMPLETE AND RETURN THE ENCLOSED AGREEMENT BY THE DUE DATE**

To accept this offer, you must sign and return both copies of the Modification Agreement to us in the enclosed, pre-paid envelope by March 20,2017.   If the Modification Agreement has notary provisions at the end, you must sign both copies before a notary public and return the notarized copies to us. We encourage you to make a copy of all documents for your records. If you do not send both signed copies of the Modification Agreement by the above date, you must contact us if you still wish to be considered for this program and have your loan modified.

**STEP 2**    **CONTINUE TO MAKE YOUR TRIAL PERIOD PAYMENTS ON TIME**

Be certain to make any remaining trial period payments on or before the dates they are due. If the trial period payments are made after their due dates or in amounts different from the amount required, your loan may not be modified. If your final Trial Period Plan payment is received after the 15th of the month, but before the 1st of the following month, then the effective date of the Modification Agreement will be postponed one month. That may result in a delay of the modified interest rate, an increase in the delinquent interest capitalized, and you will not be entitled to any incentive payment accrual for that month.

To better understand the proposed terms of your modified mortgage, please read the attached summary of your modified mortgage and the Modification Agreement.

Once your first mortgage is permanently modified under HAMP, if you have a second mortgage on the same property, you may be eligible for a modification on your second mortgage under the Second Lien Modification Program (2MP). Please visit www.MakingHomeAffordable.gov/programs/second-mortgage-<http://www.MakingHomeAffordable.gov/programs/second-mortgage->help/Pages/default.aspx to see if your second mortgage servicer is participating in 2MP. If your second mortgage servicer is participating, you should hear from them within 60 days. If not, please contact them directly to see if you are eligible for a modification.

We look forward to hearing from you no later than March 20,2017.

You may remit your modified payment, as well as future payments, in the following manner:

1) Via Mail. Please ensure your loan number is on the check or money order:
    a) Regular mail:
        CitiMortgage, Inc.
        PO Box 9001067
        Louisville, KY 40290
    b) Overnight mail:
        CitiMortgage, Inc.
        Attn: Payment Mail Opening
        4740 121st Street
        Urbandale, IA    50323-2402.
2) Via Western Union Quick Collect. Western Union charges a fee for this service.
    a) Provide the operator with the Code City: CMI, Code State: MO, and your loan number.
    b) Obtain the Money Transfer Control Number (MTCN) as confirmation of the transaction.

If you have any questions regarding this letter or if you are concerned with how we have handled your account, please contact Monica Brazzle at 855-843-2549 Ext. 0475115, Monday - Thursday 7:00 a.m. - 8:00 p.m. CT, Friday 7:00 a.m. - 5:00 p.m. CT, Saturday 7:00 a.m. - 4:00 p.m. CT or via e-mail at monica.brazzle@citi.com. You may also contact us via mail at: CitiMortgage, Inc., Homeowner Support Team, 1000 Technology Drive, Mail Station 420, O'Fallon, MO 63368.

For help understanding this notice and exploring your options at no charge, the Federal government provides contact information for HUD-approved housing counselors, which you can access by contacting the Consumer Financial Protection Bureau at http://www.consumerfinance.gov/mortgagehelp/, the Department of Housing and Urban Development at http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm or by calling the Homeowners HOPE™ Hotline Number 1-888-995-HOPE(4673) and ask for MHA Help.

Whenever $600.00 or more of a debt is forgiven as a result of settling a debt for less than the balance owing, we may be required to report the amount of the debt forgiven to the Internal Revenue Service on a 1099-C form, a copy of which will be mailed to you. If you have any questions, please consult your tax advisor.

In accordance with federal law, CitiMortgage has designated the following address where you must send a written request for information, a written notice of error, or a qualified written request:

CitiMortgage, Inc.
PO Box 6728
Sioux Falls, SD 57117-6728


Sincerely,

CitiMortgage, Inc.

> The *Making Home Affordable Program* was created to help millions of homeowners refinance or modify their mortgages. As part of this program, we – your mortgage servicer – and the Federal Government are working to offer you options to help you stay in your home.

*Attachments: Summary of Your Modified Mortgage, Two copies of the Modification Agreement*

## NOTICES

TTY Services available: Dial 711 from the United States; Dial 1-866-280-2050 from Puerto Rico.

CALLS ARE RANDOMLY MONITORED AND RECORDED TO ENSURE QUALITY SERVICE.

Hours of operation provided reflect general hours for CitiMortgage.

If responding through e-mail, please do not include confidential information. E-Mail communication is randomly monitored to ensure quality service.

If an attorney represents you, please refer this letter to your attorney and provide us with the attorney's name, address and telephone number.

The purpose of this communication is an attempt to collect a debt and any information obtained will be used for that purpose.

**TO THE EXTENT YOUR OBLIGATION HAS BEEN DISCHARGED OR IS SUBJECT TO AN AUTOMATIC STAY OF A BANKRUPTCY ORDER UNDER TITLE 11 OF THE UNITED STATES CODE, THIS NOTICE IS FOR COMPLIANCE AND INFORMATIONAL PURPOSES ONLY AND DOES NOT CONSTITUTE A DEMAND FOR PAYMENT OR AN ATTEMPT TO COLLECT ANY SUCH OBLIGATION.**

**Information for Massachusetts Residents:**

### NOTICE OF IMPORTANT RIGHTS

**YOU HAVE THE RIGHT TO MAKE A WRITTEN OR ORAL REQUEST THAT TELEPHONE CALLS REGARDING YOUR DEBT NOT BE MADE TO YOU AT YOUR PLACE OF EMPLOYMENT. ANY SUCH ORAL REQUEST WILL BE VALID FOR ONLY TEN DAYS UNLESS YOU PROVIDE WRITTEN CONFIRMATION OF THE REQUEST POSTMARKED OR DELIVERED WITHIN SEVEN DAYS OF SUCH REQUEST. YOU MAY TERMINATE THIS REQUEST BY WRITING TO THE CREDITOR.**

| SUMMARY | Here is a summary of your modified mortgage. |
|---|---|

**NEW PRINCIPAL BALANCE.** Any past due amounts as of the end of the trial period, including unpaid interest, real estate taxes, insurance premiums, and certain assessments paid on your behalf to a third party, will be added to your mortgage loan balance. In addition, your mortgage insurance premium may increase as a result of the higher mortgage loan balance. **If you fulfill the terms of the trial period including, but not limited to, making any remaining trial period payments, we will waive ALL late charges that have accrued and remain unpaid at the end of the trial period.**

[**INTEREST RATE.** The interest rate on your modified loan will be adjusted as noted in the attached Modification Agreement in Section 3.C.]

[**DEFERRAL OF PRINCIPAL.** To further reduce your mortgage payment, we will defer collection of and not collect interest on $0.00 of your outstanding principal. You will not be required to make monthly payments on that portion. This portion of principal will be due when you pay off the modified loan, which will be when

you sell or transfer an interest in your house, refinance the loan, or when the last scheduled payment is due.]

[**PRINCIPAL FORGIVENESS.** To further reduce your mortgage payment, we will forgive a portion of your outstanding principal equal to $0.00. You will never be required to repay this amount. **However, there could be income tax consequences related to this forgiveness, and you should consult a tax advisor.**]

[**PRINCIPAL REDUCTION ALTERNATIVE.** You may be eligible to have some of your principal forgiven on a deferred basis. If you make your monthly mortgage payments on time, we will forgive $0.00 of the principal balance of your loan each year on the anniversary of your first trial period payment date for three years. You will lose this benefit if your modified loan loses good standing, which means that the equivalent of three full monthly payments are due and unpaid on the last day of any month, at any time during this three-year period, including all accrued and unapplied amounts, even if the mortgage loan is later brought current. **Any principal forgiveness will be reported to the Internal Revenue Service and may have tax consequences. Therefore, you are advised to seek guidance from a tax professional.** Please contact us at 855-843-2549 Ext. 0475115, if you do not want principal forgiveness, we may have other modification options for you.]

[**ESCROW ACCOUNT.** The terms of your Modification Agreement require the servicer to set aside a portion of your new monthly payment in an escrow account for payment of your property taxes, insurance premiums and other required fees. Any prior waiver of escrows by your lender is no longer in effect. CitiMortgage, Inc. will draw on this account to pay your real estate taxes and insurance premiums as they come due. Please note that your escrow payment amount will adjust if your taxes, insurance premiums and/or assessment amounts change, so the amount of your monthly payment that CitiMortgage, Inc. must place in escrow will also adjust as permitted by law. This means that your monthly payment may change. Your initial monthly escrow payment will be $558.00 . This amount is included in the loan payment noted in Section 3.C. of the enclosed Modification Agreement; you do not need to remit this amount separately.]

[**ESCROW SHORTAGE.** Due to the timing of your tax and insurance payments, we have determined that there is a shortage of funds in your escrow account in the amount of $4,683.92 . You may pay this amount over a five-year (60 months) period. This monthly payment has already been included in the monthly escrow payment stated above. **If you wish to pay the total shortage now in a lump sum, please contact us. Paying this amount now in a lump sum will reduce your new monthly mortgage payment.**] [Servicer may include alternative provisions to deal with an escrow shortage in accordance with applicable law.]

**PAYMENT SCHEDULE.** The enclosed Modification Agreement includes a payment schedule in Section 3.C. showing your payment plan for the life of your modified loan after the trial period.

**FEES**. There are no fees or other charges for this modification.

**REPRESENTATIONS.** Please read the enclosed Modification Agreement carefully and make sure that you understand it and that the statements set forth therein, including, but not limited to, the "My Representations" section, are true and accurate. If you have any questions, please contact us at 855-843-2549 Ext. 0475115.

**TAX.** Lender will report to you and the Internal Revenue Service the amount of your mortgage balance forgiven on Form 1099-C, as required by law. Form 1099-C will be mailed to you by January 31 of the year following the year of the mortgage balance forgiveness. Please consult your tax advisor if you have any questions.

Borrower and Notary Checklist

Loan #_____8121

You are receiving this checklist to help ensure that your Modification Agreement is correctly executed. Please refer to this sheet when signing your documents and when you have your documents notarized. If any of the following steps are not completed, or are completed incorrectly, the documents will be returned to you for correction and/or completion.

Signing Requirements - **ALL** signatures and requested written information must be completed in **BLACK INK** only.

For the Borrower(s):

✓ Borrower(s) must **sign AND date** the Modification Agreement on the signature line above the pre-printed name and within the margins of the body of the document.

For the witnesses (if applicable):

✓ Two witness signatures are required for modification agreements covering properties located in Connecticut, Georgia, Louisiana, and South Carolina.
   o The same witness can witness the signing for more than one borrower, but each witness must sign the modification agreement once for each borrower. For example, if the modification agreement requires two borrower signatures, then the witness must sign the document twice, once to witness the first borrower and again to witness the signature of the second borrower.
   o For properties located in Connecticut, Georgia and South Carolina and the borrower's signature is notarized, the notary may be considered the second of the two required witness signatures.
   o For properties located in Louisiana, two witness signatures are required in addition to the notary.

For the notary (if applicable):

✓ The Notary must fill out the following fields in each notary acknowledgement section. For modification agreements with more than one borrower, one notary acknowledgement is required for each borrower. Within the header of each notary acknowledgement:

   o In the "State" field, write the name of the state where the modification agreement is being signed.
   o In the "County" field, write the name of the county where the modification agreement is being signed.
Within the body of each notary acknowledgement:
   o Following the "On this" verbiage, on the blank line write the day, month and year the signatures were acknowledged. The date must be the same date as the borrower's signature.
   o Following "personally appeared", on the blank line write the name of person whose signature is being acknowledged.
   o Following "Notary Public", the notary signs the acknowledgement.
   o Apply the notary seal or stamp next to the notary's signature. The seal or stamp must be legible.
   o Following "My Commission Expires", write the notary commission expiration date.

NOTE: The lender's acknowledgement on the loan documents will be completed by CitiMortgage, Inc. and **SHOULD NOT** be completed by the Notary Public.

LM0860.39945

**APN** ███████████

**Loan #:** ██████8121

**After Recording Return To:**
CitiMortgage, Inc.
1000 Technology Drive, MS 420R
O'Fallon, MO  63368-2240
Doc Prep/Booking & Closing

This document was prepared by: Melson Fernandes
On behalf of:
CitiMortgage, Inc.
1000 Technology Drive, MS 420R
O'Fallon, MO  63368-2240

**Original Principal Amount:** $ 165,000.00
**Unpaid Principal Amount:** $ 141,206.77
**New Principal Amount:** $210,232.80
**New Money (Cap):** $45,232.80
If property is located in the state of New York, refer to the Modification Requirements Matrix for county specific instructions on how to calculate value for New Money.

_____ **[Space Above This Line For Recording Data]** _____



### HOME AFFORDABLE MODIFICATION AGREEMENT

Borrower(s) ("I"): TERESA P BURNS, A MARRIED WOMAN JOINED BY HER HUSBAND, CURTIS C BURNS
Lender or Servicer ("Lender"): CITIMORTGAGE, INC., AS SERVICER FOR   U.S. BANK NATIONAL ASSOCIATION AS TRUSTEE FOR THE STRUCTURED ASSET SECURITIES CORPORATION MORTGAGE PASS- THROUGH CERTIFICATES, SERIES 2004-7
Date of first lien mortgage, deed of trust, or security deed ("Mortgage") and Note ("Note 02/13/04 and recorded on 02/26/04 in BOOK OR LIBER 36966, PAGE(S) 1877-1897, DOCUMENT # 103761421 on the public Records of BROWARD COUNTY, FLORIDA
Property Address ("Property"): 5541 NW 52 CIRCLE, COCONUT CREEK, FLORIDA 33073.


LEGAL DESCRIPTION: SEE ATTACHED LEGAL DESCRIPTION

If (i) my representations and covenants in Section 1 continue to be true in all material respects, (ii) all preconditions to the modification set forth in Section 2 have been met, and (iii) I meet all Home Affordable program eligibility requirements, then this Home Affordable Modification Agreement ("Modification Agreement") will amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Modification Agreement and not defined have the meaning given to them in the Loan Documents.   If more than one Borrower or Mortgagor is executing this document, each is referred to as "I."   For purposes of this document words that signify the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

I understand that after I sign and return two copies of this Modification Agreement to the Lender, the Lender will send me a signed copy of this Modification Agreement. This Modification Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1.  **My Representations and Covenants.**   I certify, represent to Lender, covenant and agree:
    A.  I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents or my default is imminent, and (ii) I do not have sufficient income or access to

sufficient liquid assets to make the monthly mortgage payments now or in the near future;

B.   One of the borrowers signing this Modification Agreement lives in the Property as a principal residence, and the Property has not been condemned;

C.   There has been no impermissible change in the ownership of the Property since I signed the Loan Documents.   A permissible change would be any transfer that the lender is required by law to allow, such as a transfer to add or remove a family member, spouse or domestic partner of the undersigned in the event of a death or marriage;

D.   I have provided documentation for **all** income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Home Affordable Modification Program ("Program"));

E.   Under penalty of perjury, all documents and information I have provided to Lender in connection with this Modification Agreement, including the documents and information regarding my eligibility for the Program, are true and correct;

F.   If Lender requires me to obtain credit counseling in connection with the Program, I will do so; and

G.   I have made or will make all payments required under a Trial Period Plan or Loan Workout Plan.

H.   I have provided to Lender a Streamline HAMP Affidavit which attests to my qualification for the Home Affordable Modification Program ("Program").

2.   **Acknowledgements and Preconditions to Modification.**   I understand and acknowledge that:

A.   If prior to the Modification Effective Date (as defined in Section 3), the Lender determines that any of my representations herein are no longer true and correct or any covenant by me has not been performed, the Loan Documents will not be modified and this Modification Agreement will terminate. In that event, the Lender will have all of the rights and remedies provided by the Loan Documents; and

B.   I understand that the Loan Documents will not be modified unless and until (i) the Lender accepts this Modification Agreement by signing and returning a copy of it to me, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Modification Agreement.

3.   **The Modification.** If my representations and covenants in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on 02/01/17 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. I understand that if I have failed to make any payments as a precondition to this modification under a trial period plan, this modification will not take effect.   The first modified payment will be due on 03/01/17.

A.   **Unpaid Principal Balance.** As of February 3, 2017, the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. $212,914.66 consisting of the unpaid amounts loaned to Borrower, previously deferred amounts, if any, plus any interest and other amounts capitalized.

B.   **Waived or Forgiven Late Charges.** For and in consideration of the modification of the loan as described herein, Lender has agreed to waive or forgive accrued, unpaid late charges subject to the Borrower's compliance with the terms of this Modification Agreement. The total amount of accrued, unpaid late charges waived or forgiven is U.S. $0.00.

C.   **Deferred Principal Balance.** For and in consideration of the modification of the loan as described herein, Lender has agreed to defer a portion of the Unpaid Principal Balance in an amount equal to $ 0.00 ("Deferred Principal Balance"). The Deferred Principal Balance, if any, is in addition to the Modified Principal Balance and shall continue to be due and owing by Borrower to Lender; provided, however, Lender agrees that for so long as Borrower makes the principal and interest payments in a timely manner and ultimately pays the Deferred Principal

Balance to the extent obligated under the terms of the Note or Security Instrument, which if not sooner demanded, shall be due and payable upon the earlier of any voluntary loan payoff or on the Maturity Date, when the final balloon payment will become due and payable. Prior to the earlier of any voluntary loan payoff or the Maturity Date, Lender will not seek to enforce its security interest under the terms of the Security Instrument solely for failure to pay the Deferred Principal Balance.

**D.  Principal Reduction Alternative.** You qualify for a total Principal Reduction Alternative in the amount of $0.00. You may be eligible to have some of your principal forgiven on a deferred basis. If you make your monthly mortgage payments on time, we will forgive $0.00 of the principal balance of your loan each year on the anniversary of your first trial period payment date for three years. You will lose this benefit if your modified loan loses good standing, which means that the equivalent of three full monthly payments are due and unpaid on the last day of any month, at any time during this three year period, including all accrued and unapplied amounts, even if the mortgage loan is later brought current. Any principal forgiveness will be reported to the Internal Revenue Service and may have tax consequences. Therefore, you are advised to seek guidance from a tax professional. **YOU MAY HAVE TO REPORT THE MORTGAGE FORGIVENESS ON YOUR TAX RETURN AND PAY INCOME TAX ON THIS MORTGAGE FORGIVENESS AMOUNT. SEE SECTION 5. TAX. PLEASE CONSULT A TAX ADVISOR.**

E.  **Modified Principal Balance.** Borrower acknowledges that the Modified Principal Balance payable under the Note and the Security Instrument shall be calculated as set forth below:

| | | |
|---|---|---|
| i. Principal Balance | $ 141,206.77 | |
| ii. Accrued unpaid Interest | $ 39,920.58 | |
| iii. Accrued unpaid late charges | $ 0.00 | |
| iv. Advances regarding delinquent real estate taxes or to pay insurance premiums | $ 23,706.69 | |
| v. Appraisal fees, attorneys fees, costs, foreclosure or other legal expenses and advances regarding prior lien-holder or other claims | $ 8,080.62 | |
| vi. Previously deferred amounts | $ 0.00 | |
| | | |
| Total (the "Unpaid Principal Balance" from Section 3(A)) | $ 212,914.66 | |
| | | |
| Less: | | |
| Forgiven Late Charges from Section 3(B) | $ 0.00 | |
| Deferred Principal Balance from Section 3(C) | $ 0.00 | |
| Principal Reduction Alternative from Section 3(D) | $ 0.00 | |
| Forgiven fees included in Section 3(E) | | $ 0.00 |
| Appraisal fees, attorneys fees, costs, foreclosure or other legal expenses and advances regarding prior lien-holder or other claims | $ 2,681.86 | |
| | | |
| Plus: | | |
| Advances to establish initial escrow account, if any | $ 0.00 | |
| Total (the "Modified   Interest bearing Principal Balance") | $ 210,232.80 | |

F.  **Repayment Terms.** Borrower promises to pay the Modified Principal Balance, plus interest and the Deferred Principal Balance, to the order of Lender as set forth below:
1)  The Maturity Date is 03/01/34. If on the Maturity Date Borrower still owes amounts under the Note and Security Instrument, as amended by this Modification Agreement, Borrower will pay these amounts in full on the Maturity Date.
2)  The interest rate will begin to accrue as of 02/01/17 and the first new monthly payment on the Modified Principal Balance will be due on 03/01/17.

3) $ 0.00 of the Unpaid Principal Balance shall be deferred and will be treated as a non-interest bearing principal forbearance. I will not pay interest or make monthly payments on the Deferred Principal Balance. In addition, $ 0.00 of the Deferred Principal Balance is eligible for forgiveness (the "Deferred Principal Reduction Amount"). Provided I am not in default on my new payments such that the equivalent of three full monthly payments are due and unpaid on the last day of any month, on each of the first, second and third anniversaries of 11/01/2016, the Lender shall reduce the Deferred Principal Balance of my Note in installments equal to one-third of the Deferred Principal Reduction Amount. Application of the Deferred Principal Reduction Amount will not result in a new payment schedule. The Unpaid Principal Balance less the Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is $210,232.80. Interest at the rate of 3.000% will begin to accrue on the Interest Bearing Principal Balance as of 02/01/17 and the first new monthly payment on the Interest Bearing Principal Balance will be due on 03/01/17. My payment schedule for the modified Loan is as follows until the loan reaches the Maturity Date of 03/01/34 when the final balloon payment will become due and payable. $149,537.79 of the Interest Bearing Principal Balance shall be an interest bearing balloon (the "balloon") and I will pay interest on this amount in my monthly modified payment.

| Years | Int Rate | Int Rate Change Date | Monthly Principal and Int Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Payments |
|-------|----------|----------------------|------------------------------------------|------------------------------------------|------------------------|-------------------|----------------------------|
| 1-17  | 3.000%   | 02/01/17             | $ 752.60                                 | $ 558.00 , may adjust periodically       | $ 1,310.60 May adjust periodically | 03/01/17          | 205                        |

**FINAL BALLOON PAYMENT DUE 03/01/34: $ 149,537.79 .**

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

The above terms shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable, step or simple interest rate.

Any terms of the Note or Security Instrument which would result in any further interest rate reduction, including without limitation a Timely Payment Rewards program, or Smart Step program, are hereby deleted and will not be applicable to the Note as modified herein. Further, any terms of the Note or Security Instrument which provide for an adjustment of the interest rate are hereby deleted.

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified Loan will be the minimum payment that will be due each month for the remaining term of the Loan. My modified Loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest being added to the outstanding principal balance.

I further understand that, provided I am not in default under the terms of this Modification Agreement and I pay my Note in full (i) any time more than 30 calendar days after the Modification Effective Date, and (ii) prior to the application of the entire Deferred Principal

Reduction Amount, I shall be fully vested in and entitled to the unapplied amount of the Deferred Principal Reduction Amount and the unapplied amount shall be deducted from my payoff balance. Any deferred principal forgiveness may be reported to the Internal Revenue Service which may have tax consequences. Therefore, you are advised to seek guidance from a tax professional.

The deferred principal balance will be treated as a non-interest bearing principal forbearance. Borrowers will not pay interest or make monthly payments on the Deferred Principal Balance.

THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE.  IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATIED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.

1) I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Modification Agreement.

2) I agree to pay in full the Deferred Principal Balance less any Deferred Principal Reduction Amount to which I am entitled, and any other amounts still owed under the Loan Documents by the earliest of:   (i) the date I sell or transfer an interest in the Property, (ii) the date I pay the entire Interest Bearing Principal Balance, or (iii) the Maturity Date.

**4.    Additional Agreements.** I agree to the following:

A.  That all persons who signed the Loan Documents or their authorized representative(s) have signed this Modification Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the Lender has waived this requirement in writing.

B.  That this Modification Agreement shall supersede the terms of any modification, forbearance, trial period plan or other workout plan that I previously entered into with Lender.

C.  To comply, except to the extent that they are modified by this Modification Agreement, with all covenants, Agreements, and requirements of Loan Documents including my Agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D.  **Funds for Escrow Items.** I will pay to Lender on the day payments are due under the Loan Documents as amended by this Modification Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgageas a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items."   I shall promptly furnish to Lender all notices of amounts to be paid under this Section 4.D.   I shall pay Lender the Funds for Escrow Items unless Lender waives my obligation to pay the Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing.   In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Modification Agreement and pay such amount and I shall then be obligated to repay to

Lender any such amount.  Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, I shall pay to Lender all Funds, and in such amounts, that are then required under this Section 4.D.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law. The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay me any interest or earnings on the Funds.   Lender and I can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide me, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to me for the excess funds in accordance with RESPA.   If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments.   If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to me any Funds held by Lender.

E.  That the Loan Documents as modified by this Modification Agreement are duly valid, binding Agreements, enforceable in accordance with their terms and are hereby reaffirmed.

F.  That all terms and provisions of the Loan Documents, except as expressly modified by this Modification Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Modification Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

G.  That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, if all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer.   If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

H.  That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Modification Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Modification Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

I.  That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void. Borrower has the right to make payments of Principal at any time before they are due. A payment of principal only is known as a "Prepayment". When Borrower makes a Prepayment, Borrower will tell the Lender in writing that Borrower is doing

so. Borrower may not designate a payment as a Prepayment if Borrower has not made all the monthly payments due under the mortgage, deed of trust, or security deed ("Mortgage") and Note ("Note") as herein modified.

If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the principal and interest payment or term unless Lender agrees in writing to those changes.

J.    That I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or Subordination Agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage Loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Modification Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination Agreement(s), then the terms of this Modification Agreement will not become effective on the Modification Effective Date and the Modification Agreement will be null and void.

K.    That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Modification Agreement if an error is detected after execution of this Modification Agreement. I understand that either a corrected Modification Agreement or a letter Agreement containing the correction will be provided to me for my signature.  At Lender's option, this Modification Agreement will be void and of no legal effect upon notice of such error.  If I elect not to sign any such corrective documentation, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Modification Agreement, and I will not be eligible for a modification under the Home Affordable Modification Program.

L.    That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity.    In addition, I understand and consent to the disclosure of my personal information and the terms of the trial period plan and this Modification Agreement by Lender to (i) the U.S. Department of the Treasury, (ii) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (iii) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (iv) companies that perform support services for the Home Affordable Modification Program and the Second Lien Modification Program; and (v) any HUD certified housing counselor.

M.    That Borrower will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Modification Agreement; or (ii) correct the terms and conditions of this Modification Agreement if an error is detected after execution of this Modification Agreement.  I understand that a corrected Modification Agreement or a letter Agreement containing the correction will be provided to me for my signature. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error.  If I elect not to sign any such corrected documentation, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Modification Agreement, and I will not be eligible for a modification.

N.    That the mortgage insurance premiums on my Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment. Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of the Modified Principal Balance.

O.    I acknowledge that the Deferred Principal Balance set forth above may or may not be reflected in the loan amount reported by Lender to any credit reporting agency or reported as part of the balance on any receipt or statement issued by Lender, but nevertheless I acknowledge that such Deferred Principal Balance is due and payable as set forth above.

P    If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property by foreclosure or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this

Security Instrument, and (b) any other of Borrower's rights.

Q. Notwithstanding the foregoing, to the extent personal liability has been discharged in bankruptcy with respect to any amount payable under the Note, as modified herein, nothing contained herein shall be construed to impose personal liability to repay any such obligation where any obligations have been so discharged. If any bankruptcy proceeding is pending or completed during a time period related to entering this Modification Agreement, I understand that I enter this Modification Agreement voluntarily and that this Agreement, or actions taken by the Lender in relation to this Modification Agreement, does not constitute a demand for payment or any attempt to collect any such obligation.

**5. Tax.** The amount of debt forgiven (your mortgage balance) is generally income to you in the year forgiven, unless you qualify for a tax exclusion. You will be responsible for paying any income taxes due on your mortgage balance forgiven.

Lender will report to you and the Internal Revenue Service the amount of your mortgage balance forgiven on Form 1099-C, as required by law. Form 1099-C will be mailed to you by January 31 of the year following the year of the mortgage balance forgiveness. Please consult your tax advisor if you have any questions.

[N/A] MERS LOAN. If this box is checked, the loan evidenced by the Note and secured by the Security Instrument was assigned to or the Security Instrument was prepared in the name of Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation organized and existing under the laws of Delaware and has an address and telephone number of PO Box 2026, Flint, MI 48501-2026, (888) 679-MERS. In cases where the loan has been registered with MERS who has only legal title to the interests granted by the borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage loan.

EXECUTED effective as of the day and year first above written.

ACCEPTED AND AGREED TO BY -

CITIMORTGAGE, INC., AS SERVICER FOR   U.S. BANK NATIONAL ASSOCIATION AS TRUSTEE FOR THE STRUCTURED ASSET SECURITIES CORPORATION MORTGAGE PASS- THROUGH CERTIFICATES, SERIES 2004-7

BORROWER:

By: _____
    Name

_____
    Title

_____
    Date

_____
TERESA P BURNS

_____
Date

_____
CURTIS C BURNS
Non-Borrower Spouse, I
acknowledge Modification
Agreement but do not assume
any personal liability on the
Note.

_____
Date

State of _____
County of _____

**On this** _____day of _____, in the year _____, before me, the undersigned,
personally appeared, TERESA P BURNS personally known to me or proved to me on the basis of
satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within Instrument and
acknowledged to me that HE/SHE/THEY executed the same in HIS/HER/THEIR capacity(ies), and that by

HIS/HER/THEIR signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted executed the instrument.

Notary Public    _____

My Commission Expires:    _____


State of _____
County of _____

**On this** _____ day of _____, in the year _____, before me, the undersigned, personally appeared, CURTIS C BURNS personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within Instrument and acknowledged to me that HE/SHE/THEY executed the same in HIS/HER/THEIR capacity(ies), and that by HIS/HER/THEIR signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted executed the instrument.

Notary Public    _____

My Commission Expires:    _____

LEGAL DESCRIPTION

Commence at the Northernmost Northeast corner of said Tract "E"; thence South 89 degrees 37 minutes 06 seconds West along the North line of said Tract "E", a distance of 499.05 feet to the Point of Beginning; thence South 00 degrees 22 minutes 54 seconds East, a distance of 10.00 feet to a point of curvature of a curve concave to the Southeast having a radius of 45.00 feet; thence Westerly, Southwesterly and Southerly along the arc of said curve, through a central angle of 102 degrees 50 minutes 23 seconds, an arc length of 90.77 feet to a point; thence South 89 degrees 37 minutes 06 seconds West, a distance of 91.13 feet; thence North 00 degrees 22 minutes 54 seconds West, a distance of 65.00 feet to a point on said North line of Trace "E" ; thence North 89 degrees 37 minutes 06 seconds East along said North line, a distance of 135.00 feet to the Point of Beginning. Said lands situate in the City of Coconut Creek, Broward.

**Date: February 3, 2017**

**Loan Number:** ▮▮▮▮8121
**Lender: CITIMORTGAGE, INC., AS SERVICER FOR   U.S. BANK NATIONAL ASSOCIATION AS TRUSTEE FOR THE STRUCTURED ASSET SECURITIES CORPORATION MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2004-7**
**Borrower:   TERESA BURNS**
**Property Address: 5541 NW 52 CIRCLE COCONUT CREEK, FLORIDA 33073**

### Florida Affidavit of Continuous Marriage

STATE OF FLORIDA
COUNTY OF_____

BEFORE ME, the undersigned Notary Public, personally known to me or who produced _____ as identification, appeared _____ and _____, (hereinafter "Affiants"), state that they have personal knowledge of the facts and matters set forth herein:

Affiants are over the age of eighteen (18) years and reside at _____.

This Affidavit pertains to the following real property:   5541 NW 52 CIRCLE COCONUT CREEK, FLORIDA 33073

Affiants state that they are executing this Affidavit for the purpose of establishing in the public records that they are married to each other, and such marriage has been continuous and uninterrupted from _____ through _____.

Affiant is aware that grantee/lender and First American Title are relying upon this Affidavit to issue title insurance policies without exception to the matter(s) noted above.   Affiant does hereby indemnify First American Title against any loss or damage occasioned as of reliance upon this Affidavit (including attorneys' fees and costs) caused as a result of any inaccuracies contained in this Affidavit.

Affiant is familiar with the nature of an oath and with the penalties provided by the laws of the State of Florida for falsely swearing to statements made in an Affidavit of this nature.   Affiant further certifies that he/she has read this Affidavit and completely understands its contents.

Affiant has caused this Affidavit to be executed this _____ day of _____, 20_____.

_____        _____
Signature                                Signature

_____        _____
Print Name                               Print Name

STATE OF FLORIDA
COUNTY OF _____

The foregoing instrument was acknowledged before me this _____ day of ___, 20_____, by _____ who is personally known to me or who has produced _____ as identification and who did (did not) take an oath.

_____
Notary Public

(Notarial Seal)

_____
Printed Name

**Making Home Affordable Program**
**Streamline HAMP Affidavit**



Each borrower and co-borrower is required to sign this Affidavit as a condition of receiving a streamline mortgage modification under the Home Affordable Modification Program (HAMP). Each reference to "I" or other similar words means each borrower and co-borrower signing below. **When you sign and date this affidavit, you will be certifying, under penalty of perjury, that all of the statements, representations and certifications made herein are true and correct.**

| Loan Number | Property Address | Mortgage Servicer |
|---|---|---|
| ████8121 | 5541 NW 52 CIR COCONUT CREEK, FL 33073 | CitiMortgage, Inc. |

### HARDSHIP AFFIDAVIT

I understand that having a financial hardship is a condition to receiving a mortgage modification under HAMP. I hereby certify that I am experiencing a financial hardship, and as a result, I do not have sufficient income or access to sufficient liquid assets to make the contractual monthly mortgage payments now or in the near future. Examples of financial hardships include, but are not limited to, reduced household income, increased household expenses, unemployment, excessive debt payments, and insufficient cash reserves.

### DODD-FRANK CERTIFICATON

The following information is requested by the federal government in accordance with the Dodd-Frank Wall Street Reform and Consumer Protection Act (Pub. L. 111-203). **You are required to furnish this information.** The law provides that no person shall be eligible to begin receiving assistance from the Making Home Affordable Program (MHA), authorized under the Emergency Economic Stabilization Act of 2008 (12 U.S.C. 5201 et seq.), or any other mortgage assistance program authorized or funded by that Act, if such person, in connection with a mortgage or real estate transaction, has been convicted, within the last 10 years, of any one of the following: (A) felony larceny, theft, fraud, or forgery, (B) money laundering or (C) tax evasion.

I certify under penalty of perjury that I have not been convicted within the last 10 years of any one of the following in connection with a mortgage or real estate transaction: (a) felony larceny, theft, fraud, or forgery, (b) money laundering or (c) tax evasion.

I understand that the servicer, the U.S. Department of the Treasury, or their respective agents may investigate the accuracy of my statements by performing routine background checks, including automated searches of federal, state and county databases, to confirm that I have not been convicted of such crimes. I also understand that knowingly submitting false information may violate Federal law. This certification is effective on the earlier of the date listed below or the date this Affidavit is received by my servicer.

### RENTAL PROPERTY CERTIFICATION

I understand that I am only eligible for a mortgage modification under HAMP if the property described above is my principal residence OR a rental property. If the property described above is a rental property and **not my principal residence, I hereby make the following   certifications:**

(a)  I intend to rent the property to a tenant or tenants for at least five years following the effective date of my mortgage modification. I understand that the servicer, the U.S. Department of the Treasury, or their respective agents may ask me to provide evidence of my intention to rent the property during such time. I further understand that such evidence must show that I used reasonable efforts to rent the property to a tenant or tenants on a year-round basis, if the property is or becomes vacant during such five-year period. The term "reasonable efforts" includes, without limitation, advertising the property for rent in local newspapers, websites or other commonly used forms of written or electronic media, and/or engaging a real estate or other professional to assist in renting the property, in either case, at or below market rent.

(b) The property is not my secondary residence and I do not intend to use the property as a secondary residence for at least five years following the effective date of my mortgage modification. I understand that if I do use the property as a secondary residence during such five-year period, my use of the property may be considered to be inconsistent with the certifications I have made herein. The term "secondary residence" includes, without limitation, a second home, vacation home or other type of residence that I personally use or occupy on a part-time, seasonal or other basis.

(c) I do not own more than five (5) single-family homes (i.e., one-to-four unit properties) excluding my principal residence.

**Notwithstanding the foregoing certifications, I may at any time sell the property, occupy it as my principal residence, or permit my legal dependent, parent or grandparent to occupy it as their principal residence with no rent charged or collected, none of which will be considered to be inconsistent with the certifications made herein.**

### OTHER HAMP MODIFICATION

I have notified my mortgage servicer of any trial period plan or permanent mortgage modification that I previously received under HAMP for any other property I own or have owned in the past, individually or jointly with other borrowers. I understand that my mortgage servicer needs this information to determine my eligibility for HAMP.

### INFORMATION FOR GOVERNMENT MONITORING PURPOSES

The following information is requested by the federal government in order to monitor compliance with federal statutes that prohibit discrimination in housing. **You are not required to furnish this information, but are encouraged to do so. The law provides that a lender or servicer may not discriminate either on the basis of this information, or on whether you choose to furnish it.** If you furnish the information, please provide both ethnicity and race. For race, you may check more than one designation. If you do not furnish ethnicity, race, or sex, the lender or servicer is required to note the information on the basis of visual observation or surname if your lender or servicer interviewed you in person. If you do not wish to furnish the information, please check the box below.

| BORROWER | ☐ I do not wish to furnish this information | CO-BORROWER | ☐ I do not wish to furnish this formation |
|---|---|---|---|
| Ethnicity: | ☐ Hispanic or Latino | Ethnicity: | ☐ Hispanic or Latino |
| | ☐ Not Hispanic or Latino | | ☐ Not Hispanic or Latino |
| Race: | ☐ American Indian or Alaska Native | Race: | ☐ American Indian or Alaska Native |
| | ☐ Asian | | ☐ Asian |
| | ☐ Black or African American | | ☐ Black or African American |
| | ☐ Native Hawaiian or Other Pacific Islander | | ☐ Native Hawaiian or Other Pacific Islander |
| | ☐ White | | ☐ White |
| Sex: | ☐ Female | Sex: | ☐ Female |
| | ☐ Male | | ☐ Male |

### TO BE COMPLETED BY INTERVIEWER

This request was taken by:

☐ Face-to-face
☐ Interview
☐ Mail
☐ Telephone
☐ Internet

_____
*Interviewer's Name (print or type) & ID Number*

_____
*Interviewer's Signature          Date*

_____
*Interviewer's Phone Number (include area code)*

*Name/Address of Interviewer's Employer:*

<u>NOTICE TO BORROWERS</u>



Be advised that by signing this document you understand that any documents and information you submit to your servicer in connection with the Making Home Affordable Program are under penalty of perjury. Any misstatement of material fact made in the completion of these documents including but not limited to misstatement regarding your occupancy of your property, hardship circumstances, and/or income, expenses, or assets will subject you to potential criminal investigation and prosecution for the following crimes: perjury, false statements, mail fraud, and wire fraud. The information contained in these documents is subject to examination and verification. Any potential misrepresentation will be referred to the appropriate law enforcement authority f or investigation and prosecution. By signing this document you certify, represent and agree that: "Under penalty of perjury, all documents and information I have provided to my Servicer in connection with the Making Home Affordable Program, including the documents and information regarding my eligibility for the program, are true and correct."

If you are aware of fraud, waste, abuse, mismanagement or misrepresentations affiliated with the Troubled Asset Relief Program, please contact the SIGTARP Hotline by calling 1-877-SIG-2009 (toll-free), or www.sigtarp.gov <http://www.sigtarp.gov/> and provide them with your name, our name as your servicer, your property address, loan number and the reason for escalation.

**<u>Beware of Foreclosure Rescue Scams. Help is FREE!</u>**

- There is never a fee to get assistance or information about the Making Home Affordable Program from your lender or a HUD- approved housing counselor.
- Beware of any person or organization that asks you to pay a fee in exchange for housing counseling services or modification of a delinquent loan.
- Beware of anyone who says they can "save" your home if you sign or transfer over the deed to your house. Do not sign over the deed to your property to any organization or individual unless you are working directly with your mortgage company to forgive your debt.
- Never make your mortgage payments to anyone other than your mortgage company without their approval.

Acknowledgement and Agreement

1. I understand that the Servicer, the U.S. Department of the Treasury, the owner or guarantor of my mortgage loan, or their respective agents may investigate the accuracy of my statements, may require me to provide additional supporting documentation and that knowingly submitting false information may violate Federal or other applicable law.

2. I authorize and give permission to the Servicer, the U.S. Department of the Treasury, and their respective agents, to assemble and use a current consumer report on all borrowers obligated on the loan, to investigate each borrower's eligibility for HAMP and the accuracy of my statements and any documentation that I provide in connection therewith. I understand that these consumer reports may include, without limitation, a credit report, and be assembled and used at any point to assess each borrower's eligibility thereafter.

3. I understand that if I have intentionally defaulted on my existing mortgage, engaged in fraud or if it is determined that any of my statements or any information contained in the documentation that I provide are materially false and that I was ineligible for HAMP, the Servicer, the U.S. Department of the Treasury, or their respective agents may terminate my participation in HAMP, including any right to future benefits and incentives that otherwise would have been available thereunder, and also may seek other remedies available at law and in equity, such as recouping any benefits or incentives previously received.

4. I certify that the property located at the address set forth above is a habitable residential property that is not subject to a condemnation notice.

5. I certify that I am willing to provide all requested documents and to respond to all Servicer communications in a timely manner. I understand that time is of the essence.

6. I understand that the Servicer will use the information I provide to evaluate my eligibility for HAMP, but the Servicer is not obligated to offer me assistance based solely on the representations in this document or other documentation submitted in connection with HAMP.

7. If I am eligible for HAMP, and I accept and agree to all terms of a related trial period notice, plan, or agreement, I also agree that the terms of this Acknowledgment and Agreement are incorporated into such notice, plan, or agreement by reference as if set forth therein in full. My first timely payment following my servicer's notification of my eligibility for HAMP has served or will serve as my acceptance of the terms set forth in the notice, plan, or agreement sent to me.

8. I understand that my Servicer will collect and record personal information that I submit in this Affidavit or through other means, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about my account balances and activity. I understand and consent to the Servicer's disclosure of my personal information and the terms of any HAMP notice, plan or agreement to the U.S. Department of the Treasury and its agents, Fannie Mae and Freddie Mac in connection with their responsibilities under HAMP, companies that perform support services in conjunction with HAMP, any investor, insurer, guarantor, or servicer that owns, insures, guarantees, or services my first lien or subordinate lien (if applicable) mortgage loan(s) and to any HUD-certified housing counselor.

9. I consent to being contacted concerning my mortgage modification at any e-mail address or cellular or mobile telephone number I have provided to the Servicer. This includes text messages and telephone calls to my cellular or mobile telephone.

**The undersigned certifies under penalty of perjury that all statements in this document are true and correct.**

_____

| Borrower Signature | Social Security Number | Date of Birth | Date |

_____

| Co-Borrower Signature | Social Security Number | Date of Birth | Date |

**HOMEOWNER'S HOPE HOTLINE**

If you have questions about this document or the Making Home Affordable Program, please call your servicer. If you have questions about the program that your servicer cannot answer or need further counseling, you can call the Homeowner's HOPE™ Hotline at 1-888-995-HOPE (4673). The Hotline can help with questions about the program and offers free HUD-certified counseling services in a variety of languages.



February 3, 2017


CHAD VAN HORN
CHAD T VAN HORN
330 N Andrews Ave #450
FT LAUDERDALE, FL 33301-


|  |  |
|---|---|
| Borrower Name: | TERESA P BURNS;<br>CURTIS C BURNS |
| Property Address: | 5541 NW 52 CIRCLE<br>COCONUT CREEK, FLORIDA 33073 |
| CitiMortgage Loan #: | ████8121 |
| Case #: | 15-20816 |

Dear CHAD VAN HORN,
IMPORTANT: This communication is in regards to your above-referenced client's mortgage loan. Please forward to your client if you deem appropriate.

Dear CitiMortgage Customer(s),

Please note: As a result of your bankruptcy case, this letter   is not attempting to collect a debt from you   or in any way violate any provision of the United States Bankruptcy Code. This letter has been sent to you for informational purposes only. This is not a bill or a request for payment, or a statement that you are personally obligated in any way to make a payment.

Your decision to discuss workout options with CitiMortgage is strictly voluntary.   You are not obligated to pursue any workout options discussed with us.   At your request, we will immediately terminate any such discussions should you no longer wish to pursue these options.

Enclosed is your Loan Modification Agreement. Please take the time to thoroughly read and understand this document; you will need to have your signatures notarized before returning the Agreement to us.

**ALL OF THE SIGNED AND NOTARIZED MODIFICATION DOCUMENTS MUST BE RETURNED AND RECEIVED BY CITIMORTGAGE NO LATER THAN March 20, 2017**.

**IF THE DOCUMENTS ARE NOT RECEIVED BY THAT DATE, THERE WILL BE NO EXTENSIONS OF TIME GRANTED, AND YOUR FILE WILL BE CLOSED WITHOUT FURTHER NOTICE OR CONSIDERATION.**

*In addition, we must receive evidence of bankruptcy   court or bankruptcy trustee approval of the Loan Modification Agreement - as required under applicable local rules, orders or practices - before the modified terms can go into effect. Once we receive evidence of bankrtupcy court or bankruptcy trustee approval,, your mortgage will be permanently modified. The existing loan and loan requirements remain in effect and unchanged pending such approval. If bankruptcy court or bankruptcy trustee approval is not obtained, you will no longer be eligible for a loan modification and the offered terms will be declined.*

We have summarized the proposed terms of the Modification Agreement and demonstrated the changes pending adjustment to the existing terms and balances:

| **Existing Terms:** | **Modified Terms:** | **Effective Dates:** |
|---|---|---|

| Due Date:  04/01/2012 | Modified Due Date: 02/01/2017 | 03/01/2017 |
|---|---|---|
| Maturity Date: 03/01/2034 | Modified Maturity Date: 03/01/2034 | 03/01/2017 |
| Current Unpaid | Modified Unpaid | |
| Principal Balance: $ 141,206.77 | Principal Balance: $ 210,232.80 | 03/01/2017 |
| Current Principal Interest Amount: $ 962.90 | Modified Principal and Interest Amount: $ 752.60 | 03/01/2017 |
| Current Fixed Interest Rate: 5.750% | Modified Fixed Interest Rate: 3.000% | 03/01/2017 |
| Current Escrow Advance (Balance):   $ 23,706.69 | Modified Required Escrow Balance: $ 4,683.92 | 03/01/2017 |

**$ 39,920.58** in delinquent Interest has been added to your Principal balance, in addition to **$ 23,706.69** in escrow amounts required to date.

For Total Principal, Interest, Taxes, and Insurance payment (PITI) please add **$ 558.00**   for escrow deposits.

Therefore, your new PITI payment will be **$ 1310.60** effective   **03/1/2017**
**Escrow amounts are subject to change.**


**ITEMS:**

| | |
|---|---|
| **Fees (Secured/Unsecured):** | **$ 7,755.62** |
| FRCLSR ATTY FEE | -5942.50 |
| BIE-BATCH INSP EXP | -310.50 |
| FORECLOSURE COSTS | -139.29 |
| INTEREST ON ESCR AD | -1363.33 |

The overnight delivery address for CitiMortgage is:

CitiMortgage, Inc.
Attn: Loss Mitigation, Dept 0010
1000 Technology Dr.
O'Fallon, MO   63368-2240


Important: Because of your bankruptcy case, you must obtain bankruptcy court or bankruptcy trustee approval of this agreement, as applicable, before CitiMortgage, Inc. considers this option for your loan. Please contact your attorney with any questions or concerns.

If you have questions regarding this letter or if you are concerned with how we have handled your account, please call Monica Brazzle at 855-843-2549 Ext. 0475115, Monday - Thursday 7:00 a.m. - 8:00 p.m. CT, Friday 7:00 a.m. - 5:00 p.m. CT or via e-mail at monica.brazzle@citi.com. You may also contact us via mail at: CitiMortgage, Inc., Homeowner Support Team, 1000 Technology Drive, MS 420, O'Fallon, MO 63368.

As a valued customer, we encourage you to take advantage of FREE credit counseling services that can provide a plan for a debt-free future. Call a credit counseling service in your area or 1-866-889-9347 today!

CitiMortgage does not endorse any specific credit counseling agency and is providing this number as a courtesy to our customers. Consumer Credit Counseling Services is not affiliated with CitiMortgage.

For help understanding this notice and exploring your options at no charge, the Federal government provides contact information for HUD-approved housing counselors, which you can access by contacting the Consumer Financial Protection Bureau at <http://www.consumerfinance.gov/mortgagehelp/>, the Department of Housing and Urban Development at <http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm> or by calling the Homeowners HOPE™ Hotline Number 1-888-995-HOPE(4673) and ask for MHA Help.

In accordance with federal law, CitiMortgage has designated the following address where you must send a written request for information, a written notice of error, or a qualified written request:

CitiMortgage, Inc.
PO Box 6728
Sioux Falls, SD 57117-6728


Sincerely,

CitiMortgage, Inc.

## NOTICES

TTY Services available: Dial 711 from the United States; Dial 1-866-280-2050 from Puerto Rico.

CALLS ARE RANDOMLY MONITORED AND RECORDED TO ENSURE QUALITY SERVICE.

Hours of operation provided reflect general hours for CitiMortgage, Inc.

If responding through e-mail, please do not include confidential information.   Email communication is randomly monitored to ensure quality service.

**TO THE EXTENT YOUR OBLIGATION HAS BEEN DISCHARGED OR IS SUBJECT TO AN AUTOMATIC STAY OF A BANKRUPTCY ORDER UNDER TITLE 11 OF THE UNITED STATES CODE, THIS NOTICE IS FOR COMPLIANCE AND INFORMATIONAL PURPOSES ONLY AND DOES NOT CONSTITUTE A DEMAND FOR PAYMENT OR AN ATTEMPT TO COLLECT ANY SUCH OBLIGATION.**

Information for Massachusetts Residents:

**NOTICE OF IMPORTANT RIGHTS**
**YOU HAVE THE RIGHT TO MAKE A WRITTEN OR ORAL REQUEST THAT TELEPHONE CALLS REGARDING YOUR DEBT NOT BE MADE TO YOU AT YOUR PLACE OF EMPLOYMENT. ANY SUCH ORAL REQUEST WILL BE VALID FOR ONLY TEN DAYS UNLESS YOU PROVIDE WRITTEN CONFIRMATION OF THE REQUEST POSTMARKED OR DELIVERED WITHIN SEVEN DAYS OF SUCH REQUEST. YOU MAY TERMINATE THIS REQUEST BY WRITING TO THE CREDITOR.**

_